Good morning. Our first case on the call of the DACA today, Tuesday, May 22, 2012, is Agenda Number 8, Case Number 112788, Roberta Minor Moore, Special Administrator v. Chicago Park District. Counsel for the appellant, you may proceed. Thank you. May it please the Court, George Smirniotis on behalf of the Chicago Park District. This appeal arises from the Second Division of the First District of the Appellate Court's decision when it answered the following certified question presented to it under Supreme Court Rule 308A in the negative. Does a non-natural accumulation of snow and ice constitute the existence of a condition of any public property as the expression is used in Section 3106 of the Tort Immunity Act? Moore v. Chicago Park District. This appeal focuses on the proper statutory interpretation of Section 3106, which states neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes. As the First District recently stated, this is because Section 3106 carves an immunity from public entities' common law duty to exercise ordinary care to maintain their property in a reasonably safe manner. Grundy v. Lincoln Park Zoo. The Chicago Park District asks this Court to reject the Second Division's negative answer to the certified question and answer it in the affirmative because under Section 3106, the previously shoveled and plowed ice and snow allegedly causing the accident in this case represented a, quote, condition of any public property, close quote, not a misuse of property. Yes, if, do we need to answer the question on condition if we find that there is no willful and wanton misconduct on behalf of the employee? Yes, Your Honor, the lower courts have held that, in fact, Section 3106 does not apply to the snow removal efforts in this case, so they are, in fact, imposing liability for what is alleged to be negligence. And, in fact, the complaint, indeed there have been three complaints filed by the plaintiff in this matter. All three of those complaints allege only negligence and do not allege willful and wanton misconduct. The Park District's argument relies upon the better reasoned authority. The Park District's brief in support and in reply represent the better reasoned and easier to apply legal rationale in answer to the certified question. The Park District has addressed each of the plaintiff's, as well as ITLA's, counterarguments against application of Section 3106 to the circumstances at issue. First, that the Park District does not own the fallen snow and, therefore, Section 3106 cannot apply. Second, the snow at issue did not have a recreational use and, therefore, Section 3106 cannot apply. Third, the snow was not affixed to Park District property so as to become part of the property's mode or state of being. And, number four, the negligence liability attaches as a result of an employee's conduct in snow removal efforts versus a condition of the property. Both ownership and usefulness of the snow at issue is immaterial to the question presented. Let's first deal with ownership. In this case, the recreational property at issue is the sidewalk curb and the condition is the snow and ice on the sidewalk curb. The issue of who owns the condition and whether the condition increases the usefulness of the recreational property were never discussed in this Court's decision in Sylvester or in the Kaiser matter as these issues were immaterial. Rather, both of these cases focused on the property as a whole, which was recreational in nature, and determining whether Section 3106 immunity applies. Plaintiffs' argument that Section 3106 does not apply because the Park District did not own the fallen snow  or lease the snow is based upon three cases which concern the concrete parking abutment in Sylvester, a chair in Kaiser, and broken glass in Majewski versus the Chicago Park District. However, in Sylvester, this Court was silent as to who owned the concrete parking abutment as the issue of ownership has no effect on whether the car stop was a condition under Section 3106. In Kaiser, the Court was also silent as to who owned the chair that was propped up against the door, which caused the injury in that matter. Again, the Court did not deem ownership as material to the existence of the condition. The Majewski case versus the Chicago Park District clearly doesn't fit into plaintiff's lines of cases. In Majewski, there was broken glass on a football field that was owned by the Chicago Park District. There was no evidence in that matter that the Park District owned the broken glass. And in fact, for example, Itla in his brief makes a misstatement of the facts in Majewski in an attempt to conform that matter to fit more of the stein affixed to the property test. Itla notes that the glass was embedded in the ground and also further states permanently embedded in the dirt. Counsel, in its essence, is this a question of statutory interpretation? Yes, it is, Your Honor. And so we're construing the term or existence of a condition of any public property, is that correct? Yes. So forth. So should we first begin by deciding, I mean, before we get to tools of statutory construction, should we first look at whether the meaning is plain? I mean, the term is not defined in the statute, is that correct? That is correct, Your Honor. And so I guess my question would be, is this ambiguous or is it plain? This court has already found that Section 3106 has plain and unambiguous language in it in the matter of Bub versus Springfield School District 186. In that matter, this court rejected a two-part test that an appellate court had created in determining whether the greater use of the property at the time a girl fell off of a bike was whether it was recreational property or nonrecreational property. The court held that in that matter that, in fact, Section 3106 is clear on its face, as did the first, a different division, the first division in Grundy. So what is your, so what is the test that we ought to apply? Well, Your Honor, we agree with Justice O'Connor in her dissent in the Moore matter that a condition of property is a characteristic of the property, whatever it may be, that could be very inclusive. The question in this case is, the certified question refers to an unnatural accumulation. Would that equally apply to a natural accumulation? Does the natural, unnatural accumulation rules, do they come into play here at all? They would not. In fact, the Moore court indicated that had the Park District done nothing to the snow, leaving it in its undisturbed state, then in fact there would not be liability attaching in this matter. Is it your position, Counsel, that Stein was just simply wrong in not finding the hose that crossed the property to be the condition of the property at the time? Yes, Your Honor. The fact is that we argue that Stein does not apply because it, there's a judicially created test that goes beyond the scope of the plain language of the statute and creates the requirement that property be fixed so as to become a part of the mode or state of being, which is a little unclear what that means, before it would be considered a condition of the property. This type of reasoning ignores the circumstance in Sylvester that the concrete car abutment, which was blocking a sidewalk to Soldier Field, was also temporary in nature of itself. Also, the chair in Kaiser was propped up against the door. That was also something that was temporary in nature, as is the glass in Majewski, as the snow in Callahan in the second district decision, and there are other cases that have held as well that property, temporary property or property not affixed to the recreational property, was found to fall within Section 3106. In Orevec matter, there was a skateboard ramp that was brought onto property that was not owned or put in place by the school district that owned that property. Also, in the matter of Brown, there was a patron had gone to a park and brought a mirror that was propped up behind a pipe, and that mirror fell. Section 3106 was found to apply there, so there have clearly been many cases that have not followed this affixed-to-property test. Counsel, how does the holding in McCune apply to the facts of this case? McCune references Section 3106, and McCune concerns conduct versus a condition of property. In McCune, an employee of the Peoria Park District was riding mules for a hayride and threw a bridle across one of the mules, which immediately started the mule. The mule bolted, taking the hayride along. There was a patron on the hayride that fell off and was injured. The liability attached in that matter because it was the conduct of the employee that was contemporaneous that resulted in the employee's injury rather than a condition of the property itself. The issue plaintiff argues is to the usefulness of the particular item of snow that the plaintiff fell on at the time is likewise immaterial. For example, in Sylvester, the court found that it was the character of the property as a whole that determined whether Section 3106 immunity applied. The court did not discuss, this court did not discuss the recreational nature of the concrete car abutment because it was immaterial to determining whether Section 3106 applied. This court made no reference to the usefulness of the concrete car stop because the only material question is whether the underlying facility or property increased the usefulness of the recreational property. Further, contrary to plaintiff's argument, the misplaced car abutment in Sylvester improperly blocking a parkway, walkway, does not increase the usefulness of the underlying walkway, yet even though that decreased the usefulness, this court still found that Section 3106 immunity applied in that matter. Furthermore, in Callahan, the second district held that a snow-covered sidewalk was bounded by the scope of Section 3106. The Callahan court never discussed whether the snow increased the usefulness of the sidewalk or recreational property. Again, because that was immaterial, it was a matter of whether it was a condition. In this matter, it's undisputed that the curb where plaintiff fell was within the parking lot adjacent to the park's fieldhouse and that it is recreational property. Moving on, again, to the issue related in Stein about property needing to be affixed. The language in Section 3106 is clear and unambiguous, the existence of a condition of any public property. The language does not say permanent condition. It does not say the condition must be affixed. And it does not say that the condition must express some essential characteristic of the property or of its mode or state of being. Applying the Stein rationale to conditions of snow and ice leads to illogical consequences because the affixed property test is vague. It raises many questions about how to examine the characteristics of snow and ice before determining whether it is a condition under Section 3106. For example, at what level of viscosity would snow and ice be considered a condition? When snow melts and turns to mud, is it a condition? Does the Stein test account for a natural freeze and thaw cycle where the characteristics of snow and ice can change numerous times over the course of a day? How does the property have to be affixed? Does it have to be stuck on or bolted to the ground or sidewalk? Does it have to penetrate the surface of the land? Is gravity holding a heavy object on the ground sufficient? How much must the object weigh? Is there a specific length of time that the property has to remain affixed before Section 3106 applies? It is these issues that are raised by Stein that make it difficult to apply. Now we would like to address the McCune matter. This Court decision in McCune v. Peoria Park District does not apply to the facts because both the Second Division and Moore and Plaintiff make an incorrect presumption that unplowed snow and ice on a curb is otherwise safe property. If unplowed snow and ice were otherwise safe property, neither the Park District nor any other public or private landowner would engage in snow removal. The Park District recognized that snow and ice could pose a danger to park patrons, which is why it voluntarily undertook snow removal efforts. This presumption that unplowed snow and ice is safe conflicts with established public policy regarding snow removal. In Illinois, the legislature sought to encourage property owners to voluntarily shovel and plow snow and ice by immunizing private landowners from negligence under the Illinois Snow Removal Act and immunizing local public entities from injuries caused by a condition of weather under Section 3105 of the Tort Immunity Act. Plaintiff's argument that the Park District's snow removal efforts have no effect on the condition of the sidewalk curb defies common sense. Again, if snow and ice removal have no effect on the condition of underlying property, there would be no reason for anyone to shovel or plow snow or ice. Furthermore, as noted in the Moore dissent, unlike Section 3105, there is nothing in Section 3106 indicating that the unnatural accumulation rule affects 3106. In the matter at hand, neither party briefed nor argued the application of McCune to the facts before either the trial or the appellate courts. Plaintiff now focuses her argument on McCune rather than Stein. Plaintiff, in fact, misstates Stein in an attempt to inform the holding in Moore to McCune. Plaintiff argues that in Stein, Section 3106 immunity did not apply because the plaintiff's injury was caused by the operational activity of temporarily placing the water hose across a walkway. Even though the 6th Division of the 1st District never mentioned McCune in its decision. The 6th Division held that the hose was not a condition of property under Section 3106 because it was moved from place to place and not affixed to the property in such a way as to become part of the property itself. Counsel, your time has expired. You may conclude. I want to be clear on this. Is it your position that willful and wanton misconduct is not to be considered in this case, or whether it's just plain negligence on the part of the Park District employee? Well, the question concerns solely an unnatural accumulation of snow and ice. So the Park District is not immunized by the conduct of, if it's not, if it's just negligence, negligent conduct. Right. The Park District would, the Park District is liable under the statute for willful and wanton misconduct. But not if it's plain negligence. Yes. So my question to you initially was, no matter which way we decide on the condition question, would not the Park District be immunized because of the, it's just negligent conduct and not willful and wanton misconduct? No, because in fact the trial courts and the appellate courts have denied the summary judgment here, asserting that because the Park District moved the snow and thereby made, created this unnatural condition, it is therefore liable in negligence and is not applying Section 3106. They say that that has no application to the incident matter because it was the conduct of the Park District in creating this. And it's your position that it doesn't matter whether that conduct was willful and wanton, or just negligence? Well, certainly willful and wanton misconduct would apply. However, we don't have to go there. There are no allegations that any conduct of the Park District in this matter, in the underlying matter, were willful and wanton. So that has never been even alleged, despite the filing of three separate complaints at law. The only pending complaint concerns solely negligent conduct. So in conclusion, I'd like to point out an additional matter in Straub v. City of Mount Oliver. Counsel, counsel, you can conclude, but don't start another argument. Okay. Well, the appellate decision in Moore is contrary to the stated legislative intent of Section 3106 of the Tort Immunity Act because it will discourage the development and maintenance of park property by diverting public funds to pay negligence claims for conditions left behind by which directly result from snow and ice removal on recreational property. The practical effect of plaintiff's argument that the Park District should be liable for negligent snow removal efforts is that it will discourage not only the Park District, but also all recreational property owners from engaging in any type of snow removal efforts for fear of liability. This is in direct conflict with the stated legislative purpose of Section 3106 and with the public policy created by Illinois snow removal statutes. Thank you. Counsel for the appellee. Thank you, Your Honor. Your Honor, for the record, Richard Grossman on behalf of the state of Sylvia Moore. Counsel, may it please the court. Obviously, we disagree very strongly with the Park District's position. We agree that it is a matter of statutory construction. And I just wanted to touch upon a question that was raised by Justice Freeman regarding willful and wanton so that I could try and clear up this particular issue. The plaintiff in this case has alleged simple negligence. The plaintiff has not alleged willful and wanton conduct. If the plaintiff, if Section 106 does not apply to the facts of the case, then simple negligence carries the day and the plaintiff is proven or will be able to prove their case. So we do not have to allege willful and wanton conduct under those circumstances if 106 doesn't apply. Mr. Grossman, why isn't this as simple as this court determining whether the piling up of the snow represents a condition or not? Well, in a sense, you could determine if it is a condition or not, but you have to go one step further and make a determination under the definition in 3101, which is the definition of what is the property in question. Under 3101, property of a local public entity and public property means real or personal property owned or leased by a local public entity. It is our position in this case that the Park District did not own or lease the snow in question. Yes, do they own the underlying land? Absolutely. As a matter of fact, they own the curb, the asphalt, they own the buildings, they own everything in that park is theirs, but the snow in question, the snow operation, which is what we have alleged that there was a negligent snow operation here, not that there was a defect of property. If you go to our complaint, our complaint does not allege a defect in the park. It alleges that these employees of the Park District engaged in negligent snow operations. Isn't that a little tortured reading of everybody agrees 3106 applies and it doesn't say liability is based on the existence of public property intended or permitted to be used for recreational use. It says the existence of a condition of any public property. That is correct. A condition of public property. And that goes back to my initial question then. What if we found that the condition of the parking lot at the relevant time was that it had piles of snow and ice on it from being plowed? Isn't that the condition of the property? I do not believe so. I do not believe that that is the appropriate interpretation under the statute considering that the statute is in derogation of the common law and must be strictly construed. Well, what wording of 3106 are you using to come up with your interpretation? Well, when it says here a condition of public property, our interpretation of that is the actual property itself. In other words, if somebody fell in a hole in the property, if curbs are broken, if sidewalks are broken, if lighting is out, things along those lines, if those things are in fact in place, we believe that that is the intent of the legislature in passing this particular statute. And not for purposes of the snow. The snow is a separate entity, a separate temporary phenomena, something that falls from the sky and disappears quickly. So rain would come under that? Rain theoretically could come under it, sure. But you would have to come up with a scenario where the rain would lead to an accident, so to speak, in that particular scenario. I do not believe that that would be very easy to do. Are you saying it has to be permanently affixed to the property before it is a part of the property? I am not saying that it has to be permanently affixed to the property. I would say those are easy cases. In other words, council mentioned many cases where there is a building that is defective or a washroom that is defective that happens to be affixed to the property. Those are easy cases. The more difficult cases are when you get into personal property, which is, let's assume it is owned by the park district. In other words, I think there is one case, and excuse me, some of the names I forget, but there was some type of a slide, an inflatable slide that the park district leased for children to use, and it was defective and a child was hurt. And the court in that particular case determined that this personal property, which was not affixed to the park, was in fact the recreational property in and of itself, and therefore would come within 106. But when we get into other items, it gets more difficult, such as stying, the watering hose, the watering hose that is being draped over, being moved to and fro, those types of things are much more difficult. As in McEwen, the hay rack, I guess it is called a hay rack, the ride that the children were on, there is no argument that that piece of property was apparently owned by the Peoria Park District but at the same time, this court found that the mere fact that it is personal property owned or leased by the entity, the recreational entity, in this case the Peoria Park District, that is not enough. So to answer one of the other questions that was presented to me, the mere fact that it is a piece of property, that it is a piece of property owned by the particular entity, doesn't answer the question as to whether it is a condition of public property. It doesn't answer that question. McEwen is that way, Stein is that way. As a matter of fact, the case of Grundy, which was recently decided, remarkably tells us the same thing. In Grundy, I think it was involving the Lincoln Park Zoo, there was some type of a sign I guess near a cafe somewhere in the park where somebody tripped on it and was injured. And in Stein, excuse me, in Grundy, the court found that that was personal property as defined in 3101. It was personal property, but, it was personal property, but, that was an issue of fact as to whether or not that is a condition of the public property used for recreational purposes. And that's what was held in that particular case. So, no, to the contrary, I'm saying that the, and that's why I think our case is much stronger. In our case, I am suggesting that the snow is not owned by anyone. There's no case in the United States or anywhere on earth that defined who owns fallen snow. And there's, there's no case law. There's nothing on it. It's an act of nature. It falls, it evaporates, it melts, it disappears. And so, my argument is simply that this was not the park district's snow. And since it was not their snow, it was not their public property. And if it's not their public property, there's nothing as alleged in the complaint and not a defect in the property. Contrary to what counsel was saying, I'm not saying there's anything wrong with the curb. There's nothing wrong with the asphalt. There's nothing wrong with the gutters or anything else at this particular park. The problem was, is the activity of the man with the shovel and what he did. He took, he took the snow, removed it to a different location and buried it on top of the snow. So if they hadn't, if they hadn't plowed the snow, would that change the result? Yes, it would change the result because, remember. How does that make any difference to your analysis? Well, I'll tell you where it comes into play. I mean, then we're into, we're into an issue as to whether or not any municipality or any public entity under any circumstance whether it be a Springfield, Chicago or any other, any other city, if they do not engage in the activity, then there could be no liability. And then we get into 105. That gets you into section 105. If you go to 3105. Why would any public entity then plow? You just said it. You said natural accumulation of ice and snow, no liability unless they plow. Every time that they did take what would seem to be reasonable action in plowing a parking lot, why would they do that if it subjected them to liability? Well, first of all, it would be, I guess one could say very easily that it's in the public good for them to do it. Obviously, you could say that. Secondly, though, but if you look at the Ziancini case decided by this court, if they engage in that activity and they do so in a negligent fashion, they are liable. That's been held, the case by this court. So in that particular case, in Ziancini, if they did not engage in that activity, they would have not been held liable by the court. Can you give me, Mr. Grossman, again, getting back to condition. Give me an example of a condition of public property that is not the property itself. I can give you one, and I don't mean to be off color, but this case is a very good example. In other words,  Not what isn't, what is. I'm sorry, maybe I misunderstood the question. I want to know a condition of public property under your analysis that is not the public property itself. Condition of public property that is not the property itself. I can't give you that. Are you talking about maybe some type of hole in the sidewalk or something that is the property itself that they would not have a duty and they'd be immunized? Is that it? Yes. That is the case. In other words, the classic situation sidewalks in disrepair, curbs in disrepair, a hole in the asphalt in the parking lot, lights are not on so somebody can't see, a door check hitting somebody on the way out, or perhaps on the baseball field. Let's go to our sidewalk. They decide to try to repair the sidewalk, but don't do such a good job of repairing the sidewalk. They fill it in and it makes it worse than it was before and somebody comes and trips. Is that a condition of the property or is that like the snow and ice that they saw? No, sir. That is a condition and in my opinion that would come within the immunity provided in 3106. And what's the difference? Give me the difference there. The difference between which? The difference between them repairing the sidewalk in a negligent manner and that now being a condition of the property. It was a condition before. You have no doubt that it was a condition when there was a hole in the sidewalk. Now they fill the sidewalk. Right. That would still be a condition. Correct. Alright. Snow and ice though plowed is not a condition. That is correct. It's not part of the it is a temporary phenomena not owned by them. Under the first example that you gave do they own the sidewalk? Yes. Do they own the hole? Yes. When they fill the hole with their material are they using their material? Yes. All of those things have direct connection to the entity if we're using the park district as an example here. So if they have a big hole and they're acting on it it's their hole. It's their sidewalk. It's their concrete. They own it. It's part of the being of the park. In the case of the snow it's not because you've got traditional you have traditional rules regarding snow removal and potential liability as it pertains to those that type of operation. What if they put up a tent on the property and somebody fell on the wires or the guy wires? Right. Under those circumstances if the tent is being used for recreational purposes let's say it's a you know kids jamboree or something or you know camping overnight thing or whatever yes there would be liability. That's the same case as the as that slide that inflatable slide that I mentioned a little while ago. There's no question if the object itself if the personal property is owned by the in this case the park district if that is a recreational object in and of itself that's an easy that's a very easy answer to determine if it's a condition of the property. What about planters? I'm sorry? What about planters? You know some of them hold trees and some of them hold flowers and you know they come in all different sizes. Right. Is that a part of the condition of the property? If one places it there it will be there forever. I mean unless it's removed it will be there forever. So if someone if a city maintained in a park a slide a snow slide or something like that for recreational purposes they would be immune? That's a different situation. In that particular scenario if there was a toboggan run or something like that yes that certainly has a recreational purpose to it under those circumstances. But in the scenario in our case there is no recreational purpose. It adds nothing to the property and in fact detracts from the property. For example in the Sylvester case with the concrete car stop which I believe weighed 100 and some odd pounds that car stop it's not mentioned in the opinion but my presumption is that it was owned by the public entity and once again assuming that somebody doesn't come and steal it or with a truck that thing is going to remain there forever. So there's a number of things for example if you let's say a goal post a football goal post that are erected and a lot of parks that are erected seasonally so in the fall they put up a couple of goal posts. Yeah it's affixed in the ground. That is their property. If somebody is hurt from that they are immune. What about if they create a toboggan run out of the ice that's accumulated from the snow and ice and it's seasonal? It's used for recreational purposes right? Without a doubt but that is a specific use under a goal post which is recreational. Another good example of what you're mentioning. Is that a condition of the property? Yes. Here's another good example if you have an ice skating rink. A lot of towns have ice skating rinks. In that scenario there is a recreational purpose for that. In other words the skating is the recreation on it. In the toboggan run that is the recreation. It's a recreational activity. Let's go to the skating rink. I like that example. So the park district maintains a skating rink, freezes water right? It's their property now for the skating rink. They take their Zamboni or whatever and plow what they've created. It's their water. And it starts to snow. So the snow comes down and now they have to plow it again but that had nothing to do with the ice rink that they maintained. So for the ice that they pushed that would be a condition that was immunized but for the falling snow that rests on the rink and they push in your allegations negligently to the corner of the rink and somebody gets hurt, that would not be immunized because it's a temporary condition that wasn't part of their property. I'm sorry, I'm not following exactly where the end of the snow is. Where does it wind up? It winds up in an unsafe condition somewhere on the side of the rink or whatever. I understand but in that scenario you're dealing with a recreational activity and it is bound to that recreational activity. Well, the ice that they made is but why is there any difference between the falling snow that's temporary that's going to melt if they don't plow it? Well, I'm sorry but if in fact they take a Zamboni over the particular ice and maybe that's a bad example. They take a plow. They take a plow. They take a plow and they push the snow in a particular area. And under those circumstances involving that scenario, an ice skating rink designed for recreational purposes in that particular location, yes of course it's not because it's whether it's a fixed or not, it's because it's temporary. That's the argument. Just as the inflatable slide was for the children. That's a recreational object. Your time has expired. You may conclude, please. Thank you very much. I believe that the findings and the rulings by the lower court should be sustained. I believe that the snow ice  skating  design should be sustained. The ownership of particular conditions was something that this court never really saw as material. The counsel is correct that in Sylvester this court was silent as the ownership of the concrete car abutment. Counsel indicated that  supposes, assumes that the Chicago Park District owned that abutment. However, regardless of his assumption, this court did not see it as a material issue in determining that decision. Much the same with in Majewski versus Chicago Park District where the ownership    abutment was a material issue. In addition, whoever might have brought it there, regardless, it became a condition much as the skateboard ramp became a condition of that property. The particular ownership of the skateboard     of that property. In addition, there was a discussion as to that it was Chicago Park District employees conduct which created this condition and that was material. In Straub where there was some metal guide wires versus the City of Mount Olive holding a tree in place, the court stated that section 3102 delineates governmental duties regarding property maintenance except as otherwise provided in this article. And then it goes on to state that the court section 3106 delineates when a remedy is available when a person is injured in a public park. The Straub court specifically rejected the plaintiff's argument in that matter that section 3106 applied only to inaction, that is, passive conditions, not to affirmative conduct of an employee. The court stated that the development and maintenance of parks do not occur through inaction. There was also mentioned that there was no discussion of defect in the condition of itself. Again, likewise in section 3106 there was no defect in the car abutment itself. That's immaterial to whether that becomes a condition of the property, much as the chair in Kaiser. Counsel, let me follow up on a few questions. 3106 is a recreational purposes immunity, correct? Several times Mr. Grossman answered questions that something was or wasn't immunized because of the recreational nature of either the condition or the conduct. So I want to ask, this was not in the fieldhouse, but this was a parking lot I guess adjacent to the Fernwood Park fieldhouse, correct? Is there any dispute that the parking lot  not used for recreational is still covered because it's part of the integral part of using the fieldhouse? That is obviously a recreational property. That is clearly recreational. It's sole purpose is recreational. The parking lot isn't though, right? I'm just asking, that's not in dispute? That is not in dispute. The parking lot, Ms. Moore arrived that morning for water aerobics and went into the park and that lot and used that sidewalk to get in to use the facilities. And the property at issue had no other purpose. For example, it was not shared with the Board of Ed facility. It is solely owned, used, and maintained by the Park District for recreational purposes. Council also made a couple of comments about the Zincina matter. Again, Zincina is concerned snow removal efforts by Cook County. It was not a recreational matter. Section 3105 applied in that matter. Again, for the circumstances at issue, it is 3106. And again, 3102, any type of duty under that section of the Tory Immunity Act does not apply as 3106 is more specific in control. Thank you. Thank you. Case number 112788, Moore v. Chicago Park District is taken under advisement as agenda number 8.